

**FILED & ENTERED**

**APR 07 2017**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY moser    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Leslie Lopez Roman and Donna Barahona Roman<br><br>Debtors | Case No.: 6:13-bk-22482-MH<br><br>Chapter: 7<br><br>Adv. No.: 6:14-ap-01183-MH |
| Robert S. Whitmore (Trustee),<br><br>Plaintiff<br><br>v.<br><br>Innovation Ventures, LLC, and International IP Holdings, LLC<br><br>Defendants | **MEMORANDUM DECISION AND ORDER DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

1

## I.　　FACTUAL BACKGROUND

In October 2012, Innovation Ventures, LLC, and International IP Holdings, LLC ("Defendants") filed an anti-counterfeiting lawsuit in the United States District Court for the Eastern District of New York (the "District Court Action"). In November and December 2012, the complaint was amended to add Leslie & Donna Roman as defendants ("Debtors").

On November 30, 2012, the district court entered an order stating, among other things, that:

> "Leslie Roman (. . . the "Asset Restrained Parties") shall be restrained from secreting any assets, and from transferring or conveying any assets, and that assets held by, or on account of any or all of the Asset Restrained Parties, in any bank, brokerage house or financial institution, shall be retrained. Upon service of this Order to Show Cause upon a bank, brokerage house or financial institution, all asset held by, for, or on account of any or all of the Asset Restrained Parties, or in an account as to which any of them has signature authority, shall be frozen and restrained and any bank, brokerage house or financial holding such funds are restrained from releasing them until further order of this Court…"

On December 28, 2012, the district court entered a substantively similar order with respect to Donna Roman.

Pursuant to these asset restraining orders (the "Freeze Orders"), several Bank of America accounts held by the Debtors ("Frozen Accounts") were frozen. The amount of funds frozen in the Frozen Accounts pursuant to the Freeze Orders was no less than $426,030.53 (the "Funds").

On January 15, 2013, Debtors and Defendants entered into a stipulation, and the district court entered an order approving the stipulation that day (the "First Agreement Order"). The First Agreement states, in pertinent part:

> "The Flexopack Defendants [i.e., Debtors] and Plaintiffs [i.e. Defendants] have agreed that, in exchange for Plaintiffs' agreement to release the Bank Accounts, the [Debtors] will transfer all assets from the Bank Accounts into the attorney trust account of their undersigned counsel, the Law Offices of Barry K. Rothman (the "Attorney Escrow Account") pending either final resolution of this action or written agreement between Plaintiffs and [Debtors]."

On February 12, 2013, the Funds were removed from the Frozen Accounts and deposited into an account held by the Debtors' attorney, Barry Rothman ("Rothman"), which the Plaintiff describes as a "client trust account" and the Defendants describe as an "attorney escrow account" (the "Account").

On July 16, 2013, the Debtors and Defendants entered into a second written agreement that resolved the District Court Action (the "Second Agreement"). On July 19, 2013, pursuant to the Second Agreement, the Funds were transferred out of the Account into an account maintained by the Defendants' counsel, Geoffrey Potter ("Potter").

2

On July 22, 2013, the Debtors commenced the instant bankruptcy by filing a Chapter 7 voluntary petition.

## II.    PROCEDURAL HISTORY

On July 14, 2014, the Trustee filed an adversary complaint ("Adversary Complaint") against Defendants to avoid and recover preferential transfers pursuant to 11 U.S.C. §§ 547 and 550. Specifically, Trustee seeks to avoid and recover the transfer of the Funds from the Account to the Defendants' counsel on July 19, 2013.

On June 18, 2015, Trustee filed a motion for summary judgment. On June 19, 2015, Defendants filed a motion for summary judgment against Trustee.[1] On September 16, 2015, the Court held its first hearings on the summary judgment motions. The hearings were continued to November 10, 2015, at which time the Court took the matter under submission.

## III.    LEGAL DISCUSSION

### A.    Parties' Legal Arguments

Trustee asserts that when Debtors transferred the Funds out of the Account to Defendants' counsel on July 19, 2013, pursuant to the Second Agreement, a transfer of the Debtors' interest in the Funds occurred. Trustee alleges that he may avoid the transfer pursuant to 11 U.S.C. § 547(b).

Conversely, Defendants assert that no transfer of the Debtors' interest in the Funds occurred within ninety days of the Petition Date because when the Debtors transferred the Funds into the Account on February 12, 2013, the transfer was into an "escrow account" created pursuant to the terms of the First Agreement. Defendants assert that under applicable law, for purposes of determining when a transfer of a debtor's interest in escrowed funds occurs, the applicable date is the date that the funds are deposited *into* escrow. Here, the Funds were deposited into the account in question on February 12, 2013.

In the alternative, Defendants assert that when the Funds were deposited into the Account, they were held in *custodia legis*. Defendants argue that when property is held in *custodia legis*, a transfer of interest in said property is deemed to occur on the date that the property is deposited into *custodia legis*.

For the reasons set forth below, the Court finds that no genuine issue of material fact exists, and that Plaintiff is not entitled to avoid the transfer of Debtors' interest in the Funds that occurred pursuant to the Second Agreement.

As a preliminary matter, the Court does not address the choice of law arguments briefed by the parties. As the material language of the First Agreement Order is unambiguous and the only

---

[1] On June 22, 2015, Defendants refiled their cross motion for summary judgment as docket number 33.

3

remaining law to apply is federal bankruptcy law. Similarly, the Court's conclusions rest upon the undisputed facts agreed to by the parties [Dkt. #22 and #42] and, therefore, the Court declines to address the parties' evidentiary objections.

### B. Legal Analysis

When seeking summary judgment, the moving party has the burden of establishing (1) the absence of a genuine issue of material fact and (2) they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the dispute regarding whether the Account was an "escrow account" or a "trust account" (or neither) is immaterial, as discussed below, since the plain language of the First Agreement Order dictates Debtors' property rights in the Account, and, therefore, resort to these labels is unnecessary. The operative legal question is whether the Funds would have been property of the estate if Debtors had filed bankruptcy ninety days earlier, at which time the Funds were held in the Account. If the Funds would not have become property of the estate if Debtors filed bankruptcy while the Funds were held in the First Account, then it necessarily follows that no transfer of property of the estate occurred.

#### I. In Custodia Legis

Defendants assert that the transfers of the Funds to the Account placed the funds in *custodia legis*. Pursuant to 11 U.S.C. § 547(e)(1)(B), a transfer of personal property "is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Under California and New York law, a creditor on a simple contract cannot acquire a lien on personal property held in *custodia legis* superior to the interest of a particular transferee who is the beneficiary of the property held in custodia legis. *Credit Bureau of San Diego v. Getty*, 61 Cal.App.2d Supp. 823, 832 (1943)(holding that funds held in custodia legis were incapable of being reached by garnishment or levy on the part of the depositor's creditors); *Clarkson Co. Ltd., Shaheen*, 716 F.2d 126, 129 (2nd Cir. 1983)(applying New York law and holding that in the absence of express statutory authority, in general, property or funds in custodia legis are not subject to either attachment or garnishment).

Here, Defendants assert that when the Funds were transferred into the Account pursuant to the First Agreement Order, they were maintained *in custodia legis* because Rothman was acting as an officer of the court. *In custodia legis* is defined as "in the custody of the law." BLACK'S LAW DICTIONARY 10th ed. 2014. The Funds here were not in the custody of the district court – they could be released by agreement of the parties. The cases cited by Defendants all concern situations where the court had complete control or the ability to distribute funds from the account, in other words, custody of the funds.

Based on the foregoing, the Court finds that when the Funds were deposited into the Account pursuant to the First Agreement, the Funds were not being held *in custodia legis*.

4

## II. Property of the Estate

11 U.S.C. § 541(a)(1) states:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Defendants argue that the Account can be characterized as an escrow account, and that the formation of the account divested Debtors of any legally cognizable interest in the Funds. Trustee argues that the Account can be characterized as a trust account, and that the formation of the account did not divest Debtors of all interest in the funds. The cases cited by the parties generally suggest that property held in escrow does not become property of the estate, while an interest in a trust is property of the estate.

As a preliminary matter, as noted in section I, *supra*, the First Agreement Order used the words "attorney escrow" and "attorney trust" interchangeably. A search of "escrow account" and "trust account" in BLACK'S LAW DICTIONARY redirects the reader to "impound account" and "client trust account," respectively. "Impound account" is defined as: "An account of accumulated funds held by a lender for payment of taxes, insurance, or other periodic debts against real property." "Client trust account" is defined as: "A bank account, usually interest-bearing, in which a lawyer deposits money belonging to a client (e.g., money received from a client's debtor, from the settlement of a client's case, or from the client for later use in a business transaction)." This is in accord with the general tendency to refer to an arrangement whereby an attorney holds funds on behalf of a client as a "trust account." *See, e.g.*, *California Rule of Professional Conduct 4-100 Preserving Identity of Funds and Property of a Client* (requiring attorneys to deposit funds received or held for the benefit of clients in a trust account).

Nevertheless, this usage is not universal. Notably, the one state that appears to predominantly refer to these arrangements as "attorney escrow accounts" is New York[2], the state where the District Court Action occurred. *See e.g.*, *Escrow Accounts, IOLA and Ethics*, NEW YORK STATE BAR ASS'N, 2017, *available at* http://www.nysba.org/EscrowAccounts/ (last visited April 4, 2017) (primarily referring to attorney escrow accounts, but using attorney trust accounts interchangeably). The arrangements sometimes referred to in New York as "attorney escrow accounts" are not substantively different than those referred to as "attorney trust accounts" elsewhere. As shown below, regardless of the characterization applied, however, it is the language of the First Agreement Order that governs the property interests in the Funds prior to the Second Agreement because the First Agreement Order dictates the limits on the Debtors' control over the Funds.

---

[2] The Court's WestLaw search of "attorney trust account" turned up 2,423 cases. The Court's WestLaw search of "attorney escrow account" produced 858 cases – the majority of which were from New York.

The tendency for funds held in escrow accounts to be excluded from a bankruptcy estate, and the tendency for funds held in trust accounts to be classified as property of the estate, are simply a reflection of the fact that the former is typically used to characterize arrangements in which a debtor has been divested of control of the funds, and the latter is predominantly used to characterize arrangements in which a debtor retains some form of oversight or control. *See, e.g.*, *Dzikowski v. NASD Regulation, Inc.*, 247 B.R. 867, 869-70 (S.D. Fla. 2000) (control of escrow determinative regarding question whether funds become property of estate); *In re Royal Bus. School, Inc.*, 157 B.R. 932, 942 (Bankr. E.D.N.Y. 1993) ("Trustee has no immediate possessory interest in the Key Account within the meaning of the concept of property of the estate so as to entitle him to an order directing the turnover of any portion of the funds."); *see generally In re All Chemical Isotope Enrichment, Inc.*, 127 B.R. 829, 837-38 (Bankr. E.D. Tenn. 1991) (listing factors to consider when determining if escrow funds are property of the estate). Likewise, distinguishing between those situations is the critical test in the case of trust accounts. *Compare In re Cutter*, 398 B.R. 6, 19 (B.A.P. 9th Cir. 2008) (trust corpus property of estate when debtor had property to "invade" corpus) *with In re McCoy*, 464 B.R. 832, 835-36 (Bankr. W.D. Wis. 2011) (trust funds not property of estate when debtor not entitled to direct funds); *see also In re Bill Heard Enters.*, 419 B.R. 858 (Bankr. N.D. Ala. 2009) (critical test is whether trust funds are available to satisfy claims of general creditors).

Here, while the Account divested Debtors of some interest in the Funds, the establishment of the Account did not divest Debtors of all interest in the Funds. *See generally In re Schwarzkopf*, 626 F.3d 1032, 1039 (9th Cir. 2010). For example, Debtors certainly held a contingent interest in the Funds which would mature upon entry of a court order in their favor in the underlying District Court Action. *See generally In re Pless*, 202 B.R. 664, 667 (Bankr. N.D.N.Y. 1996). Nevertheless, Debtors' contingent interest in the funds would not necessarily cause the Funds themselves to become property of the bankruptcy estate. *See generally U.S. v. Lawrence*, 189 F.3d 838, 845 (9th Cir. 1999) ("Assets transferred to an irrevocable trust do not become part of the estate unless the transfer or the trust is invalid."); *Matter of Newcomb*, 744 F.2d 621, 626 (8th Cir. 1984). Therefore, while Debtors retained some interest in the Funds ninety days prior to the filing of the bankruptcy petition, that interest was limited.

In delineating the boundaries of the interest that Debtors held in the Funds in the Account, a review of how bankruptcy courts have addressed similar situations is appropriate. *In re B&B Plastics, Inc.*, 2005 WL 3198656 (Bankr. S.D. Fla. 2005) involved a debtor that was sued for patent infringement in federal district court. Prior to the filing of the district court case, the debtor deposited a sum into its "attorney trust account," which was to be used to cover future payments or liability to the plaintiff. *Id.* at *1. The debtor made some attempt to deposit the funds in the court registry, but it appears that debtor did not follow through. *Id*. The district court instructed debtor's attorney to transfer the funds from his "escrow" account (the attorney trust account) to an interest bearing "escrow" account, but the attorney did not do so. *Id*. at *2. Shortly before debtor filed bankruptcy, the federal district court entered judgment against the debtor. *Id*. The federal court plaintiff was unable, however, to recover against its judgment before the debtor filed bankruptcy. *Id*. After debtor filed bankruptcy, its attorney turned the funds over to the trustee. *Id*. at *3. The bankruptcy court was tasked with determining whether the property held in the attorney trust account constituted property of the estate.

6

In the course of its analysis, the bankruptcy court stated that "funds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate." *Id*. at *4 (*quoting In re Scanlon*, 239 F.3d 1195, 1198 (11th Cir. 2001)). *B&B Plastics*, however, distinguished its situation from the situation in *Scanlon* by stating: "The Court holds that the disputed funds were not held in an escrow account because there was no written escrow agreement or court order which specified the terms of such agreement or the conditions under which the funds in the account would be released." *Id*. *Scanlon*, on the other hand, involved a case where a securities dealer, accused of defrauding investors, entered into a settlement agreement that provided for a temporary escrow account from which the funds would eventually be transferred to the defrauded investors. *Id*. at *9. While still in the temporary escrow account, the securities dealer filed bankruptcy, and the bankruptcy court held that the funds were not property of the estate. *Id*. In explaining the holding of *Scanlon*, *B&B Plastics* stated:

> The Eleventh Circuit affirmed the district court because the money in the escrow account, although deposited by the debtor's mother, was not intended to benefit the debtor. The escrow account was established pursuant to a written NASD order that directed the funds to be distributed to those customers defrauded by the debtor. The Eleventh Circuit also noted that the debtor did not have control over the funds in the temporary escrow account, and he could not control who would receive the funds. Similarly, the debtor's counsel could not release the funds in the escrow account without the approval of the bankruptcy court or by the consent of all the parties involved.

*Id*. at *8 (citations and quotations omitted). In distinguishing *Scanlon* from its situation, the bankruptcy court in *B&B Plastics* noted two important differences: (1) the account in *Scanlon* was set up after litigation began, pursuant to agency order, while in its own case, the account was unilaterally created prior to litigation; and (2) the account in *Scanlon* was specifically created to compensate victims of wrongdoing, while the disbursement directives in *B&B Plastics* were less clear. The matter before this Court represents a middle ground – resembling *Scanlon* on the former factor, and resembling *B&B Plastics* on the latter. The Court in *Scanlon* rested its conclusion on the following:

> Indeed, the district court found that the temporary escrow was established to satisfy the settlement agreement, not to benefit Debtor. Furthermore, the Debtor's mother-in-law placed the funds in the temporary escrow account with the implicit instructions that they were to be used to satisfy the settlement agreement. Additionally, the Debtor did not have control over the funds that were in the trust account, and could not direct who would receive the funds. As the bankruptcy court noted, even the Debtor's counsel could not release the funds in the escrow account to any entity without directions and approval of the U.S. Bankruptcy Court or by the consent of all parties involved. Thus, even if the Debtor could be deemed the legal owner of the funds by virtue of his repayment of his mother-in-law's loan, the fact that those funds experienced a temporary layover in an account maintained by his counsel while *en route* to compensating others without any oversight by the Debtor hardly converts them into property of the bankruptcy estate.

7

*In re Scanlon*, 239 F.3d 1195, 1198-99. The critical observation in the above excerpt is the restriction on the *Scanlon* debtor's use of the funds, and thus his, and the bankruptcy estate's, interest in the funds. While appearing to lack the degree of disbursement specificity present in *Scanlon*, this case similarly presents a situation in which Defendants were divested of any meaningful oversight or unilateral control over the Funds.

11 U.S.C. § 541(a) governs the creation of a bankruptcy estate. That provision, as well as the other various subsections of § 541, restricts the bankruptcy estate's assumption of the debtor's interests to the interests that are held by the debtor. "To the extent that such an [equitable or legal] interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate." 124 Cong. Rec. H. 11096 (daily ed. Sept. 28, 1978). While the Funds were held in the Account, Debtors did not have the legal authority to utilize or direct the Funds. To allow Trustee the right to utilize or direct the Funds would be to allow the bankruptcy estate a greater interest in the Funds than Debtors possessed, in contravention of the Code.

Ultimately, Debtors had no meaningful ability to exert control over the Funds while the Funds were in the First Account. This limited interest in the Funds while in the Account is not the level of interest in property contemplated by the preference statute under § 547 or contemplated by the policies prohibiting debtors from preferring one creditor over another (intentionally or otherwise). Here, the simple fact is that, within the preference period and prior to the time of the transfer, the Funds were not realistically available to pay Debtors' other creditors. Because Debtors' interest in the Funds would not have afforded Trustee the ability to utilize or direct the Funds, the consensual release of the Funds from the Account to the Defendants was not a transfer that deprived the bankruptcy estate of value to be distributed to creditors, and, therefore, it cannot be avoided under the "diminution of estate" doctrine. *In re Superior Stamp & Coin Co.*, 223 F.3d 1004, 1007 (9th Cir. 2000) ("In order to determine whether property that is transferred belongs to the debtor for purposes of § 547, we apply the 'diminution of estate' doctrine. Under this doctrine, a transfer of an interest of the debtor in property occurs where the transfer 'diminishes directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one.'"); *Matter of Newcomb*, 744 F.2d at 626 ("To be avoidable a transfer must deprive the debtor's estate of something of value which could otherwise be used to satisfy creditors."); (*see also* COLLIER ON BANKRUPTCY ¶ 547.03[2][b] (16th ed. 2015) ("The fundamental inquiry is whether the transfer diminished or depleted the debtor's estate.").

### IV. CONCLUSION

The Trustee's motion for summary judgment is DENIED, and the Defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

###

Date: April 7, 2017

Mark Houle
United States Bankruptcy Judge