FILED & ENTERED

MAR 27 2019

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY cargill      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Leslie Lopez Roman and Donna Barahona Roman<br><br>Debtors | Case No.: 6:13-bk-22482-MH<br><br>Chapter: 7<br><br>Adv. No.: 6:14-ap-01183-MH |
| Robert S. Whitmore (Trustee),<br><br>Plaintiff<br><br>v.<br><br>Innovation Ventures, LLC, and International IP Holdings, LLC<br><br>Defendants | **MEMORANDUM DECISION AND ORDER AFTER REMAND DENYING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

1

# I.    FACTUAL BACKGROUND

In October 2012, Innovation Ventures, LLC, and International IP Holdings, LLC ("Defendants") filed an anti-counterfeiting lawsuit in the United States District Court for the Eastern District of New York (the "District Court Action"). In November and December 2012, the complaint was amended to add Leslie & Donna Roman as defendants ("Debtors").

On November 30, 2012, the district court entered an order stating, among other things, that:

> "Leslie Roman (. . . the "Asset Restrained Parties") shall be restrained from secreting any assets, and from transferring or conveying any assets, and that assets held by, or on account of any or all of the Asset Restrained Parties, in any bank, brokerage house or financial institution, shall be retrained. Upon service of this Order to Show Cause upon a bank, brokerage house or financial institution, all asset held by, for, or on account of any or all of the Asset Restrained Parties, or in an account as to which any of them has signature authority, shall be frozen and restrained and any bank, brokerage house or financial holding such funds are restrained from releasing them until further order of this Court…"

On December 28, 2012, the district court entered a substantively similar order with respect to Donna Roman.

Pursuant to these asset restraining orders (the "Freeze Orders"), several Bank of America accounts held by the Debtors ("Frozen Accounts") were frozen. The amount of funds frozen in the Frozen Accounts pursuant to the Freeze Orders was no less than $426,030.53 (the "Funds").

On January 15, 2013, Debtors and Defendants entered into a stipulation, and the district court entered an order approving the stipulation that day (the "First Agreement Order"). The First Agreement states, in pertinent part:

> "The Flexopack Defendants [i.e., Debtors] and Plaintiffs [i.e. Defendants] have agreed that, in exchange for Plaintiffs' agreement to release the Bank Accounts, the [Debtors] will transfer all assets from the Bank Accounts into the attorney trust account of their undersigned counsel, the Law Offices of Barry K. Rothman (the "Attorney Escrow Account") pending either final resolution of this action or written agreement between Plaintiffs and [Debtors]."

On February 12, 2013, the Funds were removed from the Frozen Accounts and deposited into an account held by the Debtors' attorney, Barry Rothman ("Rothman"), which the Plaintiff describes as a "client trust account" and the Defendants describe as an "attorney escrow account" (the "Account").

On July 16, 2013, the Debtors and Defendants entered into a second written agreement that resolved the District Court Action (the "Second Agreement"). On July 19, 2013, pursuant to the Second Agreement, the Funds were transferred out of the Account into an account maintained by the Defendants' counsel, Geoffrey Potter ("Potter").

On July 22, 2013, the Debtors commenced the instant bankruptcy by filing a Chapter 7 voluntary petition.

## II.     PROCEDURAL HISTORY

On July 14, 2014, the Trustee filed an adversary complaint ("Adversary Complaint") against Defendants to avoid and recover preferential transfers pursuant to 11 U.S.C. §§ 547 and 550. Specifically, Trustee seeks to avoid and recover the transfer of the Funds from the Account to the Defendants' counsel on July 19, 2013.

On June 18, 2015, Trustee filed a motion for summary judgment. On June 19, 2015, Defendants filed a motion for summary judgment against Trustee.[1] On September 16, 2015, the Court held its first hearings on the summary judgment motions. The hearings were continued to November 10, 2015, at which time the Court took the matter under submission. On April 7, 2017, the Court entered a memorandum decision and order denying Trustee's motion for summary judgment, and granting Defendants' motion for summary judgment. Three days later, the Court entered judgment in favor of Defendants.

On April 17, 2017, Trustee appealed the Court's ruling to the Bankruptcy Appellate Panel for the Ninth Circuit. On November 20, 2017, the BAP entered judgment affirming in part, vacating, and remanding.[2]

## III.     LEGAL DISCUSSION

### A.     Parties' Legal Arguments

Trustee asserts that when Debtors transferred the Funds out of the Account to Defendants' counsel on July 19, 2013, pursuant to the Second Agreement, a transfer of the Debtors' interest in the Funds occurred. Trustee alleges that he may avoid the transfer pursuant to 11 U.S.C. § 547(b).

---

[1]     On June 22, 2015, Defendants refiled their cross motion for summary judgment as docket number 33.

[2]     The Court notes that the BAP's judgment states "AFFIRMED IN PART, REVERSED IN PART, VACATED, AND REMANDED." A review of the BAP's opinion, reveals the following conclusions at the end of page 7:

> We conclude that the bankruptcy court properly decided that the Funds were not in custodia legis and properly declined to enter summary judgment for either party on the escrow theory. We also conclude that on this record the 5-Hour ENERGY Owners' new theories do not support summary judgment in its favor. We also determine, however, that the bankruptcy court erred in one respect: it could not enter judgment in the 5-Hour ENERGY Owners' favor without first consulting relevant state law. Because it did not, we reverse.

The Court will interpret the BAP's opinion as vacating and remanding with respect to the determination whether the Funds were property of the estate, rather than reversing, which would require the BAP to have made an affirmative finding that the Funds were property of the estate, which did not occur.

Conversely, Defendants assert that no transfer of the Debtors' interest in the Funds occurred within ninety days of the Petition Date because when the Debtors transferred the Funds into the Account on February 12, 2013, the transfer was into an "escrow account" created pursuant to the terms of the First Agreement. Defendants assert that under applicable law, for purposes of determining when a transfer of a debtor's interest in escrowed funds occurs, the applicable date is the date that the funds are deposited *into* escrow. Here, the Funds were deposited into the account in question on February 12, 2013.

In the alternative, Defendants assert that when the Funds were deposited into the Account, they were held in *custodia legis*.[3] [Defendants argue that when property is held in *custodia legis*, a transfer of interest in said property is deemed to occur on the date that the property is deposited into *custodia legis*.]

For the reasons set forth below, the Court finds that no genuine issue of material fact exists, and that Plaintiff is not entitled to avoid the transfer of Debtors' interest in the Funds that occurred pursuant to the Second Agreement.

As a preliminary matter, the Court does not address the choice of law arguments briefed by the parties. As is further explained in section (III)(B)(2)(b), the Court finds that the applicable non-bankruptcy law which defines the respective property interests in the Funds is the First Agreement Order, that the language of the First Agreement Order is unambiguous, and that, subsequent to the delineation of the respective property interests, the Court must apply bankruptcy law to determine whether, and to what extent, the estate acquired an interest in the Funds. The Court's conclusions rest upon the undisputed facts agreed to by the parties [Dkt. #22 and #42] and, therefore, the Court declines to address the parties' evidentiary objections.

## B.    Legal Analysis

When seeking summary judgment, the moving party has the burden of establishing (1) the absence of a genuine issue of material fact and (2) they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Here, the dispute regarding whether the Account was an "escrow account" or a "trust account" (or neither) is immaterial, as discussed below, since the plain language of the First Agreement Order dictates Debtors' property rights in the Account, and, therefore, resort to these labels is unnecessary. The focus on how to characterize the Accounts seems to be a red herring; the label is less important than the substance of the rights. Instead, the operative legal question is whether the Funds would have been property of the estate if Debtors had filed bankruptcy ninety days earlier, at which time the Funds were held in the Account. If the Funds would not have become property of the estate if Debtors filed bankruptcy while the Funds were held in the First Account, then it necessarily follows that no transfer of property of the estate occurred.

---

[3] This argument was previously rejected by this Court and that finding was affirmed on appeal.

### 1. *In Custodia Legis*

Defendants assert that the transfers of the Funds to the Account placed the funds in *custodia legis*. Pursuant to 11 U.S.C. § 547(e)(1)(B), a transfer of personal property "is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Under California and New York law, a creditor on a simple contract cannot acquire a lien on personal property held in *custodia legis* superior to the interest of a particular transferee who is the beneficiary of the property held in custodia legis. *Credit Bureau of San Diego v. Getty*, 61 Cal.App.2d Supp. 823, 832 (1943)(holding that funds held in custodia legis were incapable of being reached by garnishment or levy on the part of the depositor's creditors); *Clarkson Co. Ltd., Shaheen*, 716 F.2d 126, 129 (2nd Cir. 1983)(applying New York law and holding that in the absence of express statutory authority, in general, property or funds in custodia legis are not subject to either attachment or garnishment).

Here, Defendants assert that when the Funds were transferred into the Account pursuant to the First Agreement Order, they were maintained *in custodia legis* because Rothman was acting as an officer of the court. *In custodia legis* is defined as "in the custody of the law." BLACK'S LAW DICTIONARY 10th ed. 2014. The Funds here were not in the custody of the district court – they could be released by agreement of the parties. The cases cited by Defendants all concern situations where the court had complete control or the ability to distribute funds from the account, in other words, custody of the funds.

Based on the foregoing, the Court finds that when the Funds were deposited into the Account pursuant to the First Agreement, the Funds were not being held *in custodia legis*.

### 2. *Property of the Estate*

#### a. *Overview of Approach*

The Court will take this opportunity to clarify the approach and rationale contained within its previous opinion and to respond to certain concerns raised by the BAP in its opinion. There is a clearly established two-step process for determining whether funds are property of the estate. First, the Court looks to non-bankruptcy law[4] to determine the contours of the estate's and debtor's interest in property. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 451 (2007). Second, the Court applies 11 U.S.C. § 541(a) to determine the estate's interest in property. The Court's previous order did not clearly separate and sequentially analyze the two steps, therefore, the two steps are clearly bifurcated below.

---

[4] Page 19 of the BAP order contains the following two consecutive sentences: "But the contours of the estate's and debtor's interest in property are determined by reference to nonbankruptcy, usually state, law. Accordingly, the bankruptcy court's conclusion that it need not apply state law was erroneous." (citations and quotation omitted). Here, the Court believes that applicable non-bankruptcy law, i.e. the First Agreement Order, satisfactorily resolves the issue, and that, therefore, no resort to traditional sources of "state law" is necessary.

It is important to note, however, that the two steps are related; the characterization of the respective property interests only needs to be detailed enough for the Court to determine whether the Funds were property of the estate. In other words, in this situation, the Court needs to reference non-bankruptcy law to the extent necessary to ascertain whether the Funds are property of the estate; if the Court reaches a determination that the property is not property of the estate, any further reference to non-bankruptcy law is unnecessary.

The Court further notes that the latter step, determining the estate's interest in property, can overwhelm the former step, delineating the respective property interests under non-bankruptcy law, and produce some confusion. For example, the following excerpt is from pages 19-20 of the BAP opinion, and represents a continuation of the excerpt contained in footnote 4 of this opinion:

> The cases the bankruptcy court relied on underscore this point. Both *In re B&B Plastics, Inc.* and *In re Scanlon* apply state law: Florida law. *See in re Scanlon*, 239 F.3d at 1197 ("The extent and validity of the debtor's interest in property is a question of state law. Under Florida law . . . .")

While the quotation identified above makes it appear that *Scanlon* is on the verge of applying state law, the quotation, in its complete form, takes a quick left turn. To wit:

> Under Florida law, legal title to property placed in an escrow account remains with the grantor until the occurrence of the condition specified in the escrow agreement. *Nonetheless*, funds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate.

*In re Scanlon*, 239 F.3d 1195, 1197-98 (11th Cir. 2001) (emphasis added) (citations and footnote omitted). A review of *Scanlon* makes it clear that the Court considered the terms and nature of the escrow agreement (in that case, the applicable non-bankruptcy law), but no application of Florida statutory or case law occurred.[5] That approach underscores this Court's conclusion that the terms and nature of the First Agreement Order may be sufficient here, rendering a parsing of New York or California escrow or trust law unnecessary.

In order to determine to what extent this Court must ascertain the contours of the respective property interests by reference to non-bankruptcy law, this Court must first ascertain the relevant standard for determining whether property is property of the estate. Therefore, the Court will proceed in the following order. First, the Court will determine the applicable standard for property of the estate, using cases with relatively similar factual situations. Then the Court will look to non-bankruptcy law to determine the Debtors' interest in the Funds while the Funds were subject to the First Agreement Order. Then the Court will apply the applicable standard for determining property of the estate to Debtors' interest in the funds.

---

[5] The Court notes that the quotation from *Scanlon* identified is the only point in *Scanlon* where Florida statutory or case law is even mentioned, and it is certainly not applied. Clearly Florida state law regarding legal title to an escrow account had no bearing on the Eleventh Circuit's opinion, as is evidenced by the sentence that followed the reference to Florida law..

b. *Property of the Estate*

11 U.S.C. § 541(a)(1) states:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an
> estate. Such estate is comprised of all the following property, wherever located and
> by whomever held;
>> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or
>> equitable interests of the debtor in property as of the commencement of the
>> case.

Plaintiffs and Defendants dispute whether the First Account should be characterized as a trust
account or an escrow account. As noted above, the Court considers this dispute to be a red
herring; the label is less important than the substance of the rights.[6]

While the parties have cited to cases which suggest that funds held in trust accounts are typically
classified as property of the estate, while funds held in escrow are typically excluded from a
bankruptcy estate, this tendency is simply a reflection of the fact that the latter is typically used
to characterize arrangements in which a debtor has been divested of control of the funds, while
the former is predominantly used to characterize arrangements in which a debtor retains some
form of oversight or control. *See, e.g., Dzikowski v. NASD Regulation, Inc.*, 247 B.R. 867, 869-
70 (S.D. Fla. 2000) (control of escrow determinative regarding question whether funds become
property of estate); *In re Royal Bus. School, Inc.*, 157 B.R. 932, 942 (Bankr. E.D.N.Y. 1993)
("Trustee has no immediate possessory interest in the Key Account within the meaning of the
concept of property of the estate so as to entitle him to an order directing the turnover of any
portion of the funds."); *see generally In re All Chemical Isotope Enrichment, Inc.*, 127 B.R. 829,
837-38 (Bankr. E.D. Tenn. 1991) (listing factors to consider when determining if escrow funds
are property of the estate). Likewise, distinguishing between those situations is the critical test in
the case of trust accounts. *Compare In re Cutter*, 398 B.R. 6, 19 (B.A.P. 9th Cir. 2008) (trust
corpus property of estate when debtor had property to "invade" corpus) *with In re McCoy*, 464
B.R. 832, 835-36 (Bankr. W.D. Wis. 2011) (trust funds not property of estate when debtor not
entitled to direct funds); *see also In re Bill Heard Enters.*, 419 B.R. 858 (Bankr. N.D. Ala. 2009)
(critical test is whether trust funds are available to satisfy claims of general creditors). As the
cases cited above illustrate, in both the case of trust account and the case of escrow accounts,
courts typically apply a control test to determine whether the property becomes property of the
estate.

In reviewing the case law, the Court found two cases to be particularly relevant to the property of
the estate standard. *In re B&B Plastics, Inc.*, 2005 WL 3198656 (Bankr. S.D. Fla. 2005) involved
a debtor that was sued for patent infringement in federal district court. Prior to the filing of the

---

[6] As noted more extensively in the Court's original order, the labels "attorney escrow account" and "attorney trust
account" appear to be used interchangeably in the state of New York. *See, e.g., Escrow Accounts, IOLA and Ethics*,
NEW YORK STATE BAR ASS'N 2017, *available at* http://www.nysba.org/EscrowAccounts/ (last visited April 4, 2017)
(primarily referring to attorney escrow accounts, but using attorney trust accounts interchangeably).

district court case, the debtor deposited a sum into its "attorney trust account," which was to be used to cover future payments or liability to the plaintiff. *Id.* at *1. The debtor made some attempt to deposit the funds in the court registry, but it appears that debtor did not follow through. *Id.* The district court instructed debtor's attorney to transfer the funds from his "escrow" account (the attorney trust account) to an interest bearing "escrow" account, but the attorney did not do so. *Id.* at *2. Shortly before debtor filed bankruptcy, the federal district court entered judgment against the debtor. *Id.* The federal court plaintiff was unable, however, to recover against its judgment before the debtor filed bankruptcy. *Id.* After debtor filed bankruptcy, its attorney turned the funds over to the trustee. *Id.* at *3. The bankruptcy court was tasked with determining whether the property held in the attorney trust account constituted property of the estate.

In the course of its analysis, the bankruptcy court stated that "funds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate." *Id.* at *4 (*quoting In re Scanlon*, 239 F.3d 1195, 1198 (11th Cir. 2001)). *B&B Plastics*, however, distinguished its situation from the situation in *Scanlon* by stating: "The Court holds that the disputed funds were not held in an escrow account because there was no written escrow agreement or court order which specified the terms of such agreement or the conditions under which the funds in the account would be released." *Id. Scanlon*, on the other hand, involved a case where a securities dealer, accused of defrauding investors, entered into a settlement agreement that provided for a temporary escrow account from which the funds would eventually be transferred to the defrauded investors. *Id.* at *9. While still in the temporary escrow account, the securities dealer filed bankruptcy, and the bankruptcy court held that the funds were not property of the estate. *Id.* In explaining the holding of *Scanlon*, *B&B Plastics* stated:

> The Eleventh Circuit affirmed the district court because the money in the escrow account, although deposited by the debtor's mother, was not intended to benefit the debtor. The escrow account was established pursuant to a written NASD order that directed the funds to be distributed to those customers defrauded by the debtor. The Eleventh Circuit also noted that the debtor did not have control over the funds in the temporary escrow account, and he could not control who would receive the funds. Similarly, the debtor's counsel could not release the funds in the escrow account without the approval of the bankruptcy court or by the consent of all the parties involved.

*Id.* at *8 (citations and quotations omitted). In distinguishing *Scanlon* from its situation, the bankruptcy court in *B&B Plastics* noted two important differences: (1) the account in *Scanlon* was set up after litigation began, pursuant to agency order, while in its own case, the account was unilaterally created prior to litigation; and (2) the account in *Scanlon* was specifically created to compensate victims of wrongdoing, while the disbursement directives in *B&B Plastics* were less clear. The Court in *Scanlon* rested its conclusion on the following:

> Indeed, the district court found that the temporary escrow was established to satisfy the settlement agreement, not to benefit Debtor. Furthermore, the Debtor's mother-in-law placed the funds in the temporary escrow account with the implicit instructions that they were to be used to satisfy the settlement agreement. Additionally, the Debtor did not have control over the funds that were in the trust account, and could not direct who would

receive the funds. As the bankruptcy court noted, even the Debtor's counsel could not release the funds in the escrow account to any entity without directions and approval of the U.S. Bankruptcy Court or by the consent of all parties involved. Thus, even if the Debtor could be deemed the legal owner of the funds by virtue of his repayment of his mother-in-law's loan, the fact that those funds experienced a temporary layover in an account maintained by his counsel while *en route* to compensating others without any oversight by the Debtor hardly converts them into property of the bankruptcy estate.

*In re Scanlon*, 239 F.3d 1195, 1198-99. The critical observation in the above excerpt is the restriction on the *Scanlon* debtor's control and use of the funds, and thus his, and the bankruptcy estate's, interest in the funds. *See In re B&B Plastics, Inc.*, at *8 ("The Eleventh Circuit also noted that the debtor did not have control over the funds in the temporary escrow account, and he could not control who would receive the funds. Similarly, the debtor's counsel could not release the funds in the escrow account without the approval of the bankruptcy court or by the consent of all the parties involved.").

### c. Debtors' Interest in the Property

Now the Court must look to non-bankruptcy law to ascertain the Debtors' interest in the Funds while the Funds were held pursuant to the First Agreement Order. As is noted in the Court's original opinion, while the First Agreement Order divested Debtors of some interest in the Funds, the establishment of the Account did not divest Debtors of all interest in the Funds. *See generally In re Schwarzkopf*, 626 F.3d 1032, 1039 (9th Cir. 2010). For example, Debtors certainly held a contingent interest in the Funds which would mature upon entry of a court order in their favor in the underlying District Court Action. *See generally In re Pless*, 202 B.R. 664, 667 (Bankr. N.D.N.Y. 1996).

While it is clear, however, that Debtors retained some interest in the Funds ninety days prior to the filing of the bankruptcy petition, it is equally clear that that interest was limited. While in *Scanlon*, the Eleventh Circuit was tasked with considering the terms and nature of the escrow agreement in determining the respective property interests, here the Court is tasked with considering the terms of the First Agreement Order in determining Debtors' property interest.[7]

The interest Debtors had in the Funds when the Funds were held in the Account can generally be described as a contingent, disputed, unliquidated interest. More specifically, upon the occurrence

---

[7] As noted in footnote 4, the BAP opinion starts by stating that property interests are defined by reference to non-bankruptcy law, then shifts to concluding that it is error to not apply "state" law. Given the BAP's citations and the discussion in section 3.II.B.A, the Court is forced to conclude that the BAP's shift from "nonbankruptcy, usually state, law" to just "state law" was unintentional. To illustrate, consider the following hypothetical: assume that the Account is properly characterized as an attorney trust account, and assume that the applicable state law states that a party that deposits funds into an attorney trust account has the right to withdraw those funds at any time. If, after the federal district court entered the First Agreement Order, Debtors simply withdrew the Funds and pointed to "state" law as the legal basis for their actions which violated the First Agreement Order, their argument would be frivolous. The federal district court's First Agreement Order, which imposes conditions on the withdrawal of the Funds, would supersede New York state law. Therefore, the Court looks to the First Agreement Order to define the respective property interests.

of one of two conditions (either final resolution of the District Court Action or agreement of the parties), Debtors may have had some right to some part of the Funds. The First Agreement Order is clear, however, that, while the Funds were in the Accounts, Debtors had no right to use, control, direct, or otherwise dispose of the Funds. *Compare with In re B&B Plastics, Inc.*, 2005 WL 3198656 at \*8 (Bankr. S.D. Fla. 2005) ("The Eleventh Circuit also noted that the debtor did not have control over the funds in the temporary escrow account, and he could not control who would receive the funds. Similarly, the debtor's counsel could not release the funds in the escrow account without the approval of the bankruptcy court or by the consent of all parties involved."). That limitation on Debtors' ability to use the Funds was indefinite – and would continue until the federal district court ordered otherwise.[8]

### d. Application of Property of the Estate Test to Debtors' Interest in the Funds

Finally, after ascertaining Debtors' property interests in the funds with reference to applicable non-bankruptcy law, the Court applies the control test identified by the Eleventh Circuit in *Scanlon* and the courts identified in section (III)(B)(2)(b), *supra*. Ultimately, Debtors had no meaningful ability to exert control over the Funds while the Funds were in the Account. If Debtors had filed bankruptcy while the Funds were being held in the Account, the trustee would not have had the right to obtain turnover of those funds. This is because 11 U.S.C. § 541(a) restricts the bankruptcy estate's interests to the interests that are held by the debtor. 124 CONG. REC. H. 11096 (daily ed. Sept. 28, 1978) ("To the extent that such an [equitable or legal] interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate."). To allow Trustee the right to use, direct, control, or otherwise dispose of the Funds in such a situation, would be to allow the bankruptcy estate a greater interest in the Funds that Debtors possessed, in contravention of the Code.

Because Debtors' contingent, disputed, unliquidated interest in the Funds would only have afforded Trustee a contingent, disputed, unliquidated interest Funds, the consensual release of the Funds from the Account to the Defendants was not a transfer that deprived the bankruptcy estate of value to be distributed to creditors, and, therefore, it cannot be avoided under the "diminution of estate" doctrine. *In re Superior Stamp & Coin Co.*, 223 F.3d 1004, 1007 (9th Cir. 2000) ("In order to determine whether property that is transferred belongs to the debtor for purposes of § 547, we apply the 'diminution of estate' doctrine. Under this doctrine, a transfer of an interest of the debtor in property occurs where the transfer 'diminishes directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one.").

The BAP substantially incorporated the above quotation into its opinion, although it favored a different citation. The BAP opined: "Here, the bankruptcy court's analysis assumes that because Debtors were divested of exclusive control over the Funds, they were divested of all leverage

---

[8] While there were two conditions to release of the Funds, presumably when the parties reached a settlement, the federal district court entered an order approving the settlement.

over the Funds."[9] The Court acknowledges that Debtors were not divested of all leverage over the Funds. The excerpt from *Superior Stamp & Coin.* reproduced above, however, does not appear to be inquiring whether *any* interest was transferred. If that were the applicable test, the "diminution of estate" doctrine would be superfluous – the test would simply be whether *any* interest were transferred. Instead, the excerpt reproduced above asks whether there is a diminution of "the fund to which creditors of the same class can legally resort for the payment of their debts." While the Funds were held in the First Account pursuant to the First Agreement Order, creditors of the same class (as Defendants) were simply unable to legally resort to Debtors' contingent, unliquidated, disputed interest in the Funds for payment of the debts. Therefore, in accordance with *Superior Stamp & Coin.* the Court concludes that the transfer of Debtors' contingent, unliquidated, disputed interest in the Funds does not constitute a transfer of property of the Debtors for purposes of § 547.

//
//
//

---

[9] The Court interprets this comment as the BAP stating that this assumption was a logically necessary, implicit assumption in the Court's reasoning. Certainly, this assumption was not explicitly made, because the second and third sentences of the fifth paragraph of section (III)(B)(II) (page 6 of the original bankruptcy court order on summary judgment) stated just the opposite. Furthermore, it does not appear that this assumption could be a logically necessary, implicit assumption because "all leverage" is not an applicable legal standard, nor is the existence of some leverage determinative of the issues before the Court.

## IV. CONCLUSION

The Trustee's motion for summary judgment is DENIED, and the Defendants' motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

###

Date: March 27, 2019

Mark Houle
United States Bankruptcy Judge